SADIE KINNAN CLARY, Appellant, v. WOODBURY COUNTY, IOWA, BOARD OF SUPERVISORS OF WOODBURY COUNTY, IOWA ET AL.

**Drainage:** CLAIMS FOR DAMAGES: TIME IN WHICH TO APPEAL. An 1 appeal from the action of a board of supervisors, in disallowing a claim for damages growing out of the establishment of a drainage district is timely, if taken within ten days from the date at which the final action is taken establishing the district.

**Same:** PARTIES. On appeal from the disallowance of damages 2 arising from the establishment of a drainage district, the district is not a proper party, as it has no legal entity.

**Same:** CLAIMS FOR DAMAGE TO LAND OUTSIDE THE COUNTY. A board 3 of supervisors has no power under the drainage law to allow and pay a claim for damages, caused by reason of the establishment of a drainage district within the county and the construction of a ditch therein, to lands lying outside the county.

*Appeal from Woodbury District Court.* — HON. F. R. GAYNOR, Judge.

TUESDAY, OCTOBER 15, 1907.

CLAIM for damages to land sustained by reason of the proposed construction of a system of drainage under chapter 68, Acts 30th General Assembly. The claim was rejected

by the board of supervisors, and an appeal taken to the district court, where the claimant's petition was dismissed, and she appeals.— *Affirmed.*

*Milchrist & Scott,* for appellant.

*Strong & Whitney,* for appellees.

SHERWIN, J.— On the 14th of November, 1904, some fifty resident landowners of Woodbury county filed with the auditor of said county a petition directed to the board of supervisors of said county, as provided by section 2, chapter 68, Acts 30th General Assembly, averring that certain lands therein described were subject to overflow and too wet for cultivation, and that the public benefit and utility and the public health, convenience, and welfare would be promoted by the construction of a ditch, to be designated the " Farmer's Ditch," for the purpose of draining such land. The petition described about eighty sections of land within the proposed drainage district, which district would extend from a point near the corporate limits of Sioux City, southeasterly across Woodbury county, to the Monona county line. On said day the petition and a bond were presented to the board of supervisors of said county, and said board appointed an engineer to make the preliminary examination and survey, as provided in said section 2. On the 21st of November, 1904, the engineer filed his report, as provided by law, which contained specifications and a recommendation for a drainage system consisting of a main ditch and seventeen lateral ditches. His report showed the total length of the main ditch to be nineteen and one-half miles, and the estimated size to be such that it would discharge one hundred and ten thousand cubic feet of water per minute. The size of the main ditch at the starting point was to be ten feet at the bottom, which width was to be gradually increased until a width of thirty feet was reached at the outlet of the ditch into Whiskey

Creek. The ditch was to have a depth of from eight to twelve feet. The main ditch was to empty into Whiskey Creek at the line between Woodbury and Monona counties and at the north line of the N. W. ¼ of section 5; the land owned by the plaintiff and in controversy in this action.

The engineer reported: " That in order to provide sufficient waterway for the combined area of Whiskey Creek and the proposed farmer's ditch, it will be necessary to increase the width of the channel of said Whiskey Creek from the mouth of the proposed farmer's ditch to the Woodbury and Monona county line to sixty feet. . . . To make this change there will be' required for the right of way a strip of land one hundred feet in width and five hundred feet in length." The statutory notices were served, and the hearing on the petition was fixed for the 12th day of January, 1905. On the 6th of January, 1905, the appellant filed her claim. On the 12th of January, the board considered the petition but continued the hearing until September 5th, because of the claims for damages. In the meantime, commissioners were appointed to assess the damages sustained by the claimants, and they reported on the 28th of August, saying respecting the land in controversy: " On account of overflow of certain of the lands described damages will result. . . . Amount allowed $4,200." On the 5th of September, 1905, the board met, pursuant to adjournment, for the purpose of considering the report of the appraisers, and their session continued over several days; the final resolution being passed on the 26th of September. On the 6th of September, the board considered the question as' to whether damages should be allowed for " overflow," and on said day passed the following resolution: " Resolved, that no damages in said the Farmer's Ditch matter will be allowed for overflow." On the 26th of September, 1905, it was resolved: " That in accordance with the resolution heretofore made by this board, the awards made by the appraisers for damages by reason of overflow be and are hereby disapproved, and

that no allowance for overflow be made to the following named persons, to-wit, . . ; Sadie K. Clary." The ditch was then established by proper resolution, and an appeal ,was taken. to the district court by the plaintiff on the 3d of October, 1905.

The appellees insist that the resolution of the board of September 6th, refusing to allow damages for overflow, was a final determination of that question as to all such

1. DRAINAGE: claims for damages: time in which to appeal.

claimants, and that, no appeal having been taken therefrom within ten days thereafter, as provided by section 6 of the drainage act, the appellant had no standing in the lower court, and consequently has none in this. The section, so far as it is material to our present inquiry, is as follows:

When the time for final action shall have arrived and after the filing of the report of the appraisers, said board shall consider the amount of damages awarded in their final determination in regard to establishing such levee or drainage district, and if in their opinion the cost of construction and the amount of damages awarded is not excessive and a greater burden than should be properly borne by the land benefited by the improvement, they shall locate and establish the same, and shall thereupon proceed to determine the amount of damages sustained by each claimant, and may hear evidence in respect thereto and may increase or diminish the amount awarded in respect thereto; and any party aggrieved may appeal from the finding of the board in establishing the improvement district or from its finding in the allowance of damages to the district court, etc.

It must be conceded that its language is somewhat ambiguous, and its meaning not entirely free from doubt; but we think it may fairly be construed to mean that the question of damages shall be finally determined at the time the ditch is located and established, and that an appeal taken within ten days thereafter is in time. The language of the section is that " any party aggrieved may appeal from the finding of the board in establishing the improvement district or

from its finding in the allowance of damages." No matter what preliminary general resolution may have been adopted, when it comes to the final question of the establishment of the ditch, the claims for damages must be considered and finally determined. The consideration of such claim may consume many days' time, as it evidently did in this instance. One claim may be disposed of on the first day of the session, and another on the last, and, if the appellee's contention were to be established as the rule, a different time would be fixed for the several appeals, and this would create confusion and unnecessary annoyance. If the consideration of the claims should extend beyond the ten days within which an appeal must be taken, a person might be compelled to appeal before he knew whether he was " aggrieved " or not, for in case the ditch should not be established on the final hearing, he certainly could not be an " aggrieved party." An appeal within ten days from the finding establishing the improvement district will fully protect the interests of all parties, and we think it the time fixed by the section.

The appellees further contend that Drainage district No. 1 is an essential party to the appeal in this case, and because it was not made a party they move to dismiss the appeal. The motion is overruled. Drainage

2. SAME:
parties.

district No. 1 is not a person or a corporation. It is nothing more than a definite body or district of land constituting an improvement district. That it has no legal entity is manifest from the various sections of chapter 68 which place the entire matter under the control and supervision of the board of supervisors. Nor do the appellees point out just how to make Drainage district No. 1 a party defendant, otherwise than has been done.

The plaintiff bases her claim for damages on the propositions that the construction of this system of drainage will result in discharging water upon her land in an unnatural way, and in greatly increased quantities; that the value of

her land will thus be destroyed, and her property taken for

3. SAME: claims for damage to land outside the county.

public use, within the meaning of the Constitution of this State; that the proceeding establishing the ditch in the manner contemplated is essentially a condemnation proceeding and is to be governed by the principles applicable to such proceedings; and that the Drainage Act under consideration confers power upon boards of supervisors to provide for and acquire outlets for ditches upon lands at or beyond the limits of the drainage district which they are authorized to establish. The real question in this case is whether chapter 68 gives the board of supervisors power to compensate the plaintiff for the damage she may suffer by reason of the construction of the ditch. The determination of such question will end this case, and hence we need not, and shall not, discuss other questions which counsel have argued. That the chapter nowhere gives boards of supervisors express power to provide for and acquire outlets for ditches upon lands or at points at or beyond the limits of the drainage district which they have authority to establish, except when such outlet must be had through the lands of an adjoining State, is conceded by the appellant. The inquiry, then, is whether such power may be fairly implied from the entire scope and structure of the act. Section 1 of chapter 68 reads as follows:

The board of supervisors of any county shall have jurisdiction, power and authority at any regular, special or adjourned session, to establish a drainage district or districts, and to locate and establish levees, and cause to be constructed as hereinafter provided any levee, ditch, drain or water course, or to straighten, widen, deepen or change any natural water course, in such county, whenever the same will be of public utility or conducive to the public health, convenience or welfare, and the drainage of surface waters from agricultural lands shall be considered a public benefit and conducive to the public health, convenience, utility and welfare.

While this section confers almost unlimited power to locate and establish drainage districts, it also expressly confines the exercise of such power to the particular county in which the improvement is to be made. It says the board of supervisors of any county may do the things enumerated, in such county. Section 2 provides for a petition "setting forth that any body or district of land in the county," etc. And, again, in the same section, the engineer appointed by the board is required to survey and examine the lands described in the petition, and make return of his proceedings to the county auditor, "which return shall set forth a full description of all lands which in his opinion will be affected by said improvement, . . . and the names of the owners thereof, as they appear in the transfer books of the auditor's office." This section again expressly limits the power of the board, and of the engineer as well, as to territory. The transfer books which are to be examined by the engineer are unmistakably those of the county where the improvement is to be made. In section 3, the same limitation is expressly made, for it provides for the service of notice by the auditor upon the owners of the land within the proposed drainage district, as such owners are shown by the transfer books in his office. The section further provides for service of notice upon each lienholder or incumbrancer of any land through which or abutting upon which the proposed improvements extends, "as shown by the county records." The appellant's contention that the notice last referred to means notice to all owners of abutting lands, whether the lands be in or out of the county, is answered by the language of the section last above quoted. All lands referred to in the entire Act, except where otherwise expressly stated, are clearly lands within the county of the contemplated improvement. In addition to this, section 40 of the Act expressly confers power upon boards of supervisors to purchase the right of way for an outlet through the lands of an adjoining State. The provision alone is intitled to great consideration in de-

termining the legislative intent as to the powers of the board. It expressly deals with the subject of insufficient outlets for ditches and by the test of exclusion limits the power of the board to the purchase of land in another State. Section 40, considered in connection with sections 30 to 38, inclusive, providing for the establishment of drainage districts through two or more counties, practically settles this controversy against the appellant's contention.

But the appellant contends that section 4 of the Act, which provides for filing claims for damages, is broad enough to warrant the board in allowing her claim, and that said section and section 47, requiring a liberal construction of the entire Act, are together sufficient warrant therefor. But the language of section 4 is general and only provides for the filing of claims. It cannot be construed to confer power on the board which is expressly withheld by other provisions of the Act. Section 47 does no more than to require a liberal construction of the Act when it can be done without repealing some of its express provisions.

We are of opinion that the board of supervisors had no power to pay the appellant's claim, and that the judgment of the district court should be, and it is, *affirmed.*